Chief Judge Wachtler and Hancock, Jr., J.
(concurring and dissenting in part). We concur with the majority to the extent that it holds that "under CEQR the potential displacement of local residents and businesses is an effect on population patterns and neighborhood character” (majority opn, at p 366) which should have been considered by the lead agency before it issued the conditional negative declaration. This holding, it must be emphasized, is not predicated on the requirements of SEQRA. It is based solely on "the rules, procedures, criteria and guidelines” adopted by the City of New York pursuant to ECL 8-0113 (3) in Executive Order No. 91, known as City Environmental Quality Review (CEQR) and, specifically on the definition found in CEQR (but not in SEQRA or any of its implementing regulations) that: "Environmental analysis means the lead agencies’ evaluation of the short and long term, primary and secondary environmental effects of an action [in determining] whether an action under consideration may or will not have a significant effect on the environment” (CEQR 1 [g] [emphasis added]).
Because this project consists of one high-rise apartment — to be constructed on a vacant lot — which adds no more than 400 persons to an existing area population of approximately 40,000, it cannot be said that under SEQRA standards it has any discernible present effect on population patterns or community or neighborhood character (ECL 8-0105 [6]) which could constitute "a significant effect on the environment” (ECL 8-0109 [2]; 6 NYCRR 617.11). Nothing in Matter of Jackson v New York State Urban Dev. Corp. (67 NY2d 400) (which concerns a project which concededly has an immediate impact on "existing patterns of population concentration” and on "existing community or neighborhood character” [ECL 8-0105 (6) (emphasis added)]) suggests that under SEQRA the potential long-term or secondary effects on population and neighborhood character would, without more, require consideration before issuance of a negative declaration. Indeed, in Jackson we cautioned that (at p 417): "[A]n agency’s substantive obligations under SEQRA must be viewed in light of a rule of reason. 'Not every conceivable environmental impact, mitigating measure or alternative must be identified and addressed before a FEIS will satisfy the substantive require *371 ments of SEQRA’ (Aldrich v Pattison, 107 AD2d 258, 266, supra; Coalition Against Lincoln W. v City of New York, 94 AD2d 483, 491, affd 60 NY2d 805, supra). The degree of detail with which each factor must be discussed obviously will vary with the circumstances and nature of the proposal (see, Webster Assoc. v Town of Webster, 59 NY2d 220, 228). Second, the Legislature in SEQRA has left the agencies with considerable latitude in evaluating environmental effects and choosing among alternatives (see, e.g., ECL 8-0109 [8]). Nothing in the law requires an agency to reach a particular result on any issue, or permits the courts to second-guess the agency’s choice, which can be annulled only if arbitrary, capricious or unsupported by substantial evidence (Aldrich v Pattison, 107 AD2d 258, 267, supra; see also, Vermont Yankee Nuclear Power Corp. v Natural Resources Defense Council, 435 US 519, 555).”
We note, moreover, that the majority opinion carefully avoids any implication that an Environmental Impact Statement (EIS) may be called for even under the more stringent requirements of CEQR. Thus, the court’s ruling does not preclude the possibility that the omission under CEQR can be readily cured by the lead agency’s preparation and submission of an amended negative declaration after it has given due consideration to the potential impact on population patterns and neighborhood character. We must, therefore, strongly disagree with so much of the majority decision as may have the effect of invalidating the special permit. Such a result is not mandated by our decision in Matter of Tri-County Taxpayers Assn. v Town Bd. (55 NY2d 41) where the court determined specifically that "an environmental impact statement [under SEQRA] should have been prepared and made available to the members of the town board and the public prior to the adoption of the resolutions” (id., at p 46). Here, under CEQR, we hold merely that certain potential effects should have been considered before the lead agency decided that an EIS was unnecessary. It is not at all certain that these effects will ultimately require anything other than a reiteration that they have no significant effect on the environment as defined in CEQR 1 (g). The invalidation of a project, even at great loss to the sponsors, is warranted when, as in Matter of Tri-County Taxpayers Assn. v Town Bd. (supra), it is clear that the public has been improperly deprived of the "detailed information about the effect which [the] proposed action is likely to have on the environment” (ECL 8-0109 [2]) which an EIS would *372 have provided and that the project has proceeded in outright violation of SEQRA. It by no means follows, however, that a project should be nullified when, as here, it may well be concluded that a negative declaration rather than an EIS is the proper course.
Judges Meyer, Simons, Kaye and Titone concur with Judge Alexander; Chief Judge Wachtler and Judge Hancock, Jr., concur in part and dissent in part and vote to grant the petition conditionally in a memorandum.
Order reversed, with costs, and petitioners’ cross motion for summary judgment granted.